Charles MULL, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

No. 22524.

United States Court of Appeals
Ninth Circuit.

Oct. 28, 1968.

Certiorari Denied Feb. 24, 1969.
See 89 S.Ct. 917.

Paul G. Rees, Jr. (argued), of Rees, Estes & Browning, Tucson, Ariz., for appellant.

Philip S. Malinsky (argued), Asst. U. S. Atty., Edward E. Davis, U.S. Atty., Philip Fahringer, Asst. U. S. Atty., Tucson, Ariz., for appellee.

Before BARNES and DUNIWAY, Circuit Judges, and McNICHOLS,* District Judge.

DUNIWAY, Circuit Judge:

The indictment in this case reads as follows:

"On or about the 4th day of June, 1966, within the District of Arizona, CHARLES MULL, an Indian, and on the San Carlos Apache Indian Reservation, did wilfully, unlawfully and feloniously, without just cause or excuse, upon the person of one Juana Brooks, an Indian, commit an assault with a dangerous weapon, to-wit: a razor knife, with the intent on the part of the said CHARLES MULL to do bodily harm to the said Juana Brooks, in violation of 18 U.S.C. § 1153."

Mull was found guilty by a jury and sentenced to five years. The evidence shows that he attacked Juana Brooks with a razor knife and cut her severely. It was stipulated that the act charged occurred within the boundaries of the San Carlos Apache Indian Reservation, in the District of Arizona, and that Charles Mull is an enrolled member of the San Carlos Apache Tribe of Indians. We consider appellant's contentions seriatim.

1. *Constitutionality of 18 U.S.C. § 1153.*

At the time of the offense, the pertinent statutes were these:

(1) 18 U.S.C. § 1153 (1964):

"Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, * * * assault with a dangerous weapon * * * within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States * * *."

(The 1968 amendment, 80 Stat. 1100, is not applicable to this case.)

(2) 18 U.S.C. § 1152 (1964):

"Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country * * *"

(3) 18 U.S.C. § 3242 (1964):

"All Indians committing the following offenses; namely * * * assault with a dangerous weapon * * * on and within the Indian country, shall be tried in the same courts, and in the same manner, as are all other persons committing any of the above crimes within the exclusive jurisdiction of the United States."

(The 1968 amendment, 80 Stat. 1101, is not applicable to this case.)

(4) 18 U.S.C. § 113 (1964):

"Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows: * * *

(c) Assault with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse, by fine of not more than $1,000 or imprisonment for not more than five years, or both."

These statutes (except section 113, which is of broader application) are the product of a long history of attempts by Congress to deal with crimes in the "Indian Country," and they are to be considered together. Section 113 defines the offense with which Mull was charged. It would also be applicable if a non-Indian were similarly charged under section 1152.

Mull argues that section 1153 is unconstitutional because it denies him equal protection and therefore due process. The argument is based upon the claim that the section creates a separate set of rules based upon racial characteristics, which is alleged to be not constitutionally permissible. Reliance is upon

---

* Honorable Ray McNichols, District Judge, District of Idaho, sitting by designation.

Loving v. Commonwealth of Virginia, 1967, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed. 2d 1010; McLaughlin v. State of Florida, 1964, 379 U.S. 184, 192, 85 S.Ct. 283, 13 L.Ed.2d 222; Bolling v. Sharpe, 1954, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884; Brown v. Board of Education, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873; Sweatt v. Painter, 1950, 339 U.S. 629, 70 S.Ct. 848, 94 L.Ed. 1114; Shelley v. Kraemer, 1948, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161; Oyama v. State of California, 1948, 332 U.S. 633, 663, 68 S.Ct. 269, 92 L.Ed. 249 (Murphy, J., concurring); Sipuel v. Board of Regents, etc., 1948, 332 U.S. 631, 68 S.Ct. 299, 92 L.Ed. 247; Edwards v. People of State of California, 1941, 314 U.S. 160, 185, 62 S.Ct. 164, 86 L.Ed. 119 (Jackson, J., concurring).

The government replies that the question has been decided against Mull by this court in Gray v. United States, 1968, 394 F.2d 96, 98. Mull urges that that decision should be overruled. We do not reach the question.

■ Prosecution for violation of section 113 can be had under either section 1153 if the defendant be an Indian, or section 1152 if he be a non-Indian. Prosecution under section 1153 must be in the federal court. In re Carmen's Petition, N.D. Cal., 1958, 165 F.Supp. 942, aff'd per curiam sub nom. Dickson v. Carmen, 9 Cir., 1959, 270 F.2d 809, cert. denied, 361 U.S. 934, 80 S.Ct. 375, 4 L. Ed.2d 355. If the offense be by a non-Indian against an Indian, prosecution under section 1152 must also be in the federal court. Donnelly v. United States, 1913, 228 U.S. 243, 272, 33 S.Ct. 449, 57 L.Ed. 820; Williams v. United States, 1946, 327 U.S. 711, 714, 66 S.Ct. 778, 90 L.Ed. 962. Thus Mull is not subject, as to the offense of which he was convicted, to any different charge, court, or penalty than he would have been were he not an Indian.[1]

It is true, that, if the assault were upon a non-Indian, and if Mull were a non-Indian, the courts of Arizona would have jurisdiction, and its laws would be applicable. The Supreme Court has so held, in spite of what appears to us to be the plain language of section 1152. People of State of New York ex rel. Ray v. Martin, 1946, 326 U.S. 496, 66 S.Ct. 307, 90 L.Ed. 261; United States v. McBratney, 1881, 104 U.S. 621, 26 L.Ed. 869. But this is not something of which Mull can complain. He was not charged with assault upon a non-Indian. And the Arizona penalty for a comparable offense is a maximum of $5,000 fine or ten years imprisonment or both (Ariz. Rev.Stat. § 13.249), while the federal penalty is a maximum of $1,000 fine or five years imprisonment, or both.

In short, as here applied, the statutes have not subjected Mull to any invidious discrimination based upon his Indian race. We deal here only with this appellant and the offense of which and the statutes under which he was convicted. We express no opinion as to other offenses, or as to the effect of later amendments to the statutes as they relate to an offense committed after their enactment.

2. *Denial of a speedy trial.*

■ The case was set for trial on April 7, 1967. It had been continued to that date from December 6, 1966, at Mull's request. Mull and his counsel appeared on April 7 and, according to appellant's brief, were told that the trial could not be reached that day. All that the record shows is that on April 7 the trial setting was vacated and on April 20 the case was set for trial on September 12. Mull did not object. The case was actually tried on September 15. However, on September 11, Mull filed a motion to dismiss under Rule 48(b), F. R.Crim.P. The moving papers make no showing of prejudice and no showing that the delay was purposeful or oppressive on the part of the government. There was no abuse of discretion in denying the motion. Moser v. United

---

1. The exceptions listed in section 1152 relating to offenses committed by Indians do not here apply because of the provisions of section 1153.

States, 9 Cir., 1967, 381 F.2d 363, cert. denied, 389 U.S. 1054, 88 S.Ct. 802, 19 L.Ed.2d 850; Fleming v. United States, 1 Cir., 1967, 378 F.2d 502.

3. *Variance.*

It is claimed that it was not proved that Juana Brooks was an Indian, thus creating a fatal variance between the indictment and the proof. The point is frivolous. She testified:

"Q. You are an Indian?

"A. Yes."

She also testified that she lived on the reservation.

4. *Poll of the jury.*

■ It is claimed that appellant was deprived of the right to poll the jury. Here is what the record shows:

"THE CLERK: United States of America, plaintiff, v. Charles Mull, defendant, No. C–2680–Globe. 'We, the jury, find the defendant, Charles Mull, guilty as charged in the Indictment. September 15, 1967. R. L. Abbott, Foreman.' THE COURT: That concludes your services, members of the jury. You are excused until further call. Thank you very much for a long, hard day.

(Jury retires from the courtroom.)"

Counsel did not ask to have the jury polled. The foregoing record does not sustain his claim that he had no chance to do so before the 12 members of the jury had left the courthouse.

5. *Evidence as to intent—expert testimony.*

■ There was considerable evidence that Mull was very drunk when he attacked the victim and also considerable evidence that he was not. Mull called Dr. James P. Downs, a cultural anthropologist. He testified that the Navajo and the Apache are both southern Athapascan peoples and that he made an intensive study of the use of liquor by the Navajo and of its effect upon them. The court then interrupted and excused the jury. There followed a colloquy between court and counsel:

"THE COURT: * * *

"Mr. Rees, what do you propose to prove by this witness?

MR. REES: I have two strings to my bow, Your Honor, the first is on the question of the tolerance of the American Indian to partaking of alcohol. I propose to show by Dr. Downs that this a very low tolerance and that the amount of intoxicants that had been consumed by the defendant in this case, on the basis of a hypothetical question which I will give to Dr. Downs, will indicate that he was incapable of forming the intent necessary to the crime charged.

THE COURT: You will not be permitted to do that.

MR. REES: May I inquire of the Court, is it a foundational issue?

THE COURT: There just isn't a field in which there can be an expert opinion. This man, a cultural anthropologist can [sic—not?] say that on a given state of facts this man would be incapable of entertaining an intent. There just isn't any field for the expert in cultural anthropology for any such testimony as that in my opinion."

We find no abuse of discretion here. At the most, Dr. Downs could have testified that the Navajo, and therefore, perhaps, the Apache, are particularly susceptible to alcohol. But the record contains no evidence as to just how much Mull had drunk. Mull said he did not remember, except that he had shared two or three pitchers of beer with two other men, and had "quite a lot" of beer later. How could Dr. Downs have testified, on the basis of such vague evidence, as to Mull's state of mind, rather than that of Indians in general? Assuming that the subject might be one for expert testimony at all, we cannot, on this record, say that it was error to reject the proposed testimony of Dr. Downs. The trial court necessarily has a considerable discretion in the matter. Formahls v. United States, 9 Cir., 1960, 278 F.2d 43, 47; Standard Oil Co. of California v. Moore, 9 Cir., 1957, 251 F.2d 188, 221,

cert. denied 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed.2d 1148; Lelles v. United States, 9 Cir., 1957, 241 F.2d 21, 26.

Counsel also indicated that he wished to show, through Dr. Downs and another cultural anthropologist, Dr. Keith Basso:

"that the Indian beliefs have a strong relationship to the state of mind and that in the particular circumstances of this case there is evidence that I will present from the defendant and from his brother, Marvin Mull, and from these two specialists and experts in this field to indicate that the state of mind of the defendant was not involved in the sense of willfulness or knowledgeability or intent, which are essential elements of the crime, that there was a belief that Mrs. Brooks was exercising certain powers, which for the lack of a better word, and trying to communicate the concept is described as witchcraft, a power over his mind, an influence over his mind, and he was seeking to destroy this influence or power over his mind, which is a different matter from having an intent to commit an assault. * * * It seems to me that we are in an area where under the laws as interpreted by the United States Government they are trying to put laws designed to regulate persons of another culture in a situation where they don't mean the same thing. * * * Within the framework of the subjective tribal beliefs and customs of the Apache Indian would be my offer of proof. It is my belief that these men would testify as experts that there is a state of mind subjectively within the mind, or capable of being within the mind of an Apache Indian, such as the defendant here, which would cause him to feel a justification for doing what ought to or had to be done in a given circumstance to rid himself of the evil influence of this particular power over him.

THE COURT: You are not claiming mental unsoundness or lack of sanity in the case?

MR. REES: Not in that sense, Your Honor. It is lack of the specific intent necessary to the crime."

To these arguments the court replied:

"If he had any such idea as that, he may testify about his state of mind, but for somebody to say that by reason of what they know about Indians that they can say he believed this, no. * * *

The defendant may testify as to what was on his mind and what he was thinking of, but the experts cannot say he was incapable of entertaining the specific intent to do some bodily injury."

Intriguing as the witchcraft defense may be, we resist a natural tendency to expatiate upon it. When Mull and his brother took the stand, neither of them said a word about it. Thus there is nothing whatever in the record on which either of the experts could have predicated an opinion. There was no error in rejecting the proffered testimony.

6. *Instructions.*

██ The court refused to instruct that:

"If the evidence in this case is susceptible to two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the defendant, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which will admit of the defendant's innocence, and reject that which points to his guilt."

This was not error. The court fully instructed on the presumption of innocence and the government's burden of proof. More is not required. Ramirez v. United States, 9 Cir., 1965, 350 F.2d 306.

Affirmed.