**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Mayce PRICE, Defendant-Appellant.
No. 72–2535.**

United States Court of Appeals,
Ninth Circuit.

Jan. 22, 1973.

---

Dean R. Pic'l (argued), John M. Polakovic, Pomona, Cal., for defendant-appellant.

Richard E. L. Strauss, Asst. U. S. Atty. (argued), Stephen G. Nelson, E. Mac Amos, Asst. U. S. Attys., Harry D. Steward, U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before MERRILL, KOELSCH and KILKENNY, Circuit Judges.

**PER CURIAM:**

This appeal involves the scope of a strip search conducted by Customs officials, which search revealed the presence on appellant's person of narcotics. We reverse.

■■ As this court has repeatedly held, the foundation required for a valid strip search of an individual at our borders is "real suspicion," which we have defined as subjective suspicion supported by objective, articulable facts that would lead an experienced, prudent Customs official to suspect that a particular person is carrying contraband. United States v. Guadalupe-Garza, 421 F.2d 876 (9th Cir. 1970); United States v. Johnson, 425 F. 2d 630 (9th Cir. 1970); Henderson v. United States, 390 F.2d 805 (9th Cir. 1967). The officers in this case had no prior information about appellant as a possible smuggler of narcotics, and they did not observe any of the customary indicia of narcotics use, such as needle marks, pinpointed eyes, or drug paraphernalia. To justify the search, they rely on the appellant's nervousness during questioning and the presence of a "suspicious bulge" around her waist. While a bulge, as described by the officers, would provide the objective fact required to authorize some inquiry, we do not think it justified the complete strip search conducted here. "The objective, articulable facts must bear some reasonable relationship to suspicion that something is concealed on the body of the person to be searched; otherwise, the scope of the search is not related to the justification for its initiation, as it must be to meet the reasonableness standard of the Fourth Amendment." United States v. Guadalupe-Garza, *supra*, 421 F.2d at 879. Quite early in the officers' examination of appellant, it became apparent that the suspicious bulge about appellant's waist was not due to concealed contraband, as they had initially suspected, but rather it was simply body

fat.[1] Their hunch thus disproved, the officers should have discontinued the search. They were not entitled, on the basis of appellant's nervousness alone,[2] to keep looking until they found something. We do not measure the reasonableness of a search by its results, but by the information on which the search was conducted. Here, the specific information was of a limited nature, and could be verified by a limited search. That is all that was therefore justified under the Fourth Amendment; the search of appellant was, on these facts excessive.

The judgment is reversed.

KILKENNY, Circuit Judge (dissenting):

Rather than a run of the mill nervousness, the officers observed an unusual nervousness on the part of appellant, a type of nervousness displayed by only 1% of the drivers of over 1,300 automobiles passing through the checkpoint on a given day. This curious nervousness was observed not only while appellant was at the wheel of her automobile, but also when she was attempting to open the trunk of the vehicle and on her arrival at the inspection station. Beyond that, she gave the officers an incredible story on the purpose of her visit to Mexico, i. e. she desired to show that country to her five year old grandchild. Additionally, when she was removing her clothing in the presence of the In-

spectress, she took off her girdle and underpants at the same time and ". . she was doing it in a rather peculiar fashion, like she was trying to hide something." It was at this point that the Inspectress noticed the unconventional packet in the crotch of appellant's underpants. I have doubt that the record supports the majority's statement in Footnote 1 that ". . . the Inspectress' suspicions about the bulge were wholly eliminated as soon as appellant had removed her dress . . . ." When asked about the contents of the packet, the appellant said that it contained heroin and cocaine.

This factual background presents a "skin" or a "clothing" search, rather than a "body cavity" search of the type involved in United States v. Guadalupe-Garza, 421 F.2d 876 (CA9 1970), the authority upon which the majority principally relies. The distinction between the two searches is recognized in United States v. Shields, 453 F.2d 1235, 1236 (CA9 1972) and United States v. Saville, 435 F.2d 871 (CA9 1970), cert. denied 403 U.S. 955, 91 S.Ct. 2276, 29 L.Ed.2d 865 (1971), rehearing denied 404 U.S. 906, 92 S.Ct. 195, 30 L.Ed.2d 179 (1971). The facts before the experienced Customs officers justified "a real suspicion" that appellant was carrying contraband and, in my opinion, warranted the questioned search.

I would affirm.

---

1. The Customs Inspectress testified on cross-examination as follows:

Q. . . . [D]id you notice the bulge as you escorted [appellant] into the [inspection] room?

A. Yes, sir, I did.

Q. Could you describe it for me?

A. Well, it turned out that it was, the girdle was tight and it was sort of a roll of flesh around the middle section is what it turned out to be.

Q. Could you describe the bulge for me?

A. It was a bulge of skin. It was hard to tell until she was undressed what it was.

Q. Any different than any other bulge of skin that you had ever seen before?

A. Well, before she had her dress off, I didn't know whether it was a bulge of skin or something else.

Although the Inspectress' suspicions about the bulge were wholly eliminated as soon as appellant had removed her dress, nevertheless, the Inspectress then ordered appellant to remove her girdle and underpants; the packet of narcotics was discovered in appellant's crotch and was not visible until she was in the process of removing the girdle and underpants.

2. We note that the trial court ordered stricken from evidence the first Customs Inspector's observation, during his testimony, that appellant's stated reasons for her trip to Mexico with her young grandson constituted "an unusual situation."