**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Carlos Albert RODRIGUEZ,
Defendant-Appellant.**

No. 78–2569.

United States Court of Appeals,
Ninth Circuit.

March 5, 1979.

Richard M. Gale (argued), Seattle, Wash., for defendant-appellant.

Marie Creson, Asst. U. S. Atty. (argued), Seattle, Wash., for plaintiff-appellee.

Before WRIGHT and GOODWIN, Circuit Judges, and SPENCER WILLIAMS,* District Judge.

* Of the Northern District of California.

**EUGENE A. WRIGHT, Circuit Judge:**

Rodriguez was convicted of transporting $11,104.00 into the United States without complying with the reporting requirements of 31 U.S.C. §§ 1058 and 1101. He appeals, challenging the legality of the strip search during customs inspection and asserting that the government failed to give him adequate notice of the statutory requirements. Both contentions are without merit.

## FACTS

Rodriguez landed at the Seattle-Tacoma International Airport after a flight from Tokyo. Upon deplaning, he was directed to the customs inspection area where he presented a completed customs form. Question 11 on that form asked:

> Are you or any family member carrying over $5,000.00 in monetary instruments such as coin, currency, traveler's checks, money orders, or negotiable instruments in bearer form? (*If yes, you must file a report on Form 4790, as required by law.*)

Rodriguez had checked the "No" box.

He was sent to a secondary area for further questioning. Inspector Lick, who conducted that part of the inspection, had observed Rodriguez change from one line to another several times while waiting in the secondary area. During the initial baggage check, Lick asked Rodriguez again whether he was carrying currency in excess of $5,000, and Rodriguez apparently replied he was not.

In Rodriguez's luggage, Lick discovered three items which aroused his suspicion: rectal pain reliever ointment, rubber prophylactics, and adhesive sealant. Lick, an experienced customs agent, recognized these as items commonly associated with narcotics smuggling activities.[1]

When questioned about them Rodriguez failed to allay the inspector's suspicions.

He said that the sealant was used for scuba diving equipment, but only after being prodded by Lick. Nor was the purpose of the rectal ointment explained and Lick learned from Rodriguez that he did not have hemorrhoids.

Lick's suspicions were aroused by further details. He noted that Rodriguez's plane tickets were broken into three sections, with only one section showing trips to narcotics source countries. This suggested that Rodriguez was attempting to conceal his travel to those countries. Further, Rodriguez's alien reentry permit did not bear enough "chop marks" for the kind of traveling Rodriguez had done.[2]

Lick was dissatisfied with Rodriguez's responses to some questions. Although he told Lick that he had only recently finished school and had a job as an accountant, Rodriguez did not know what a CPA was. Lick also found it unusual that Rodriguez could finance an extended trip when he had said that he had not been employed for a long time before entering school.

Lick and two DEA agents then took Rodriguez into a private room for a pat-down search, telling him that the search was only for weapons. Lick found it notable that Rodriguez then asked whether he would have to remove his trousers.

Nothing was discovered in his outer clothing but in his wallet was a copy of a bank draft receipt in Rodriguez's name for $10,-000 drawn on a Tokyo Bank and payable to another person. When questioned about that, Rodriguez said that he had taken the money with him when he left the United States but no longer had it.

While Lick left the room briefly to speak to his supervisor, one of the DEA agents told Rodriguez to unfasten his trousers. He did so and removed from his underwear two packets of money, each containing $5,000 in

---

1. We are aware that prophylactics are commonly used for carrying heroin in body cavities and that rectal pain reliever is frequently used. Black adhesive sealant looks like hashish oil and raw opium, which are sometimes smuggled in tubes of substances similar to the adhesive sealant.

2. Chop marks are the official immigration stamps that are placed in an international travel document to indicate that a traveler has been processed through immigration authorities abroad.

currency. Lick returned and conducted a full strip search.

## I.

### THE SEARCH

Rodriguez contends that his Fourth Amendment privacy rights were violated by the search.

■ This court has enunciated at least three standards applicable to border searches, depending on the degree of intrusiveness. *See United States v. Palmer*, 575 F.2d 721, 723 (9th Cir. 1978); *Henderson v. United States*, 390 F.2d 805, 808 (9th Cir. 1967). While anyone at a border may be stopped for questioning and subject to an inspection of luggage, handbags, pockets, wallets, without any suspicion at all on the part of customs officials, "real suspicion" is required before a strip search may be conducted, and the "clear indication" test is used for body cavity searches. *Henderson*, 390 F.2d at 808. In *United States v. Guadalupe-Garza*, 421 F.2d 876, 879 (9th Cir. 1970), we stated:

> "Real suspicion" justifying the initiation of a strip search is subjective suspicion supported by objective, articulable facts that would reasonably lead an experienced, prudent customs official to suspect that a particular person seeking to cross our border is concealing something on his body for the purpose of transporting it into the United States contrary to law.

> The objective, articulable facts must bear some reasonable relationship to suspicion that something is concealed on the body of the person to be searched; otherwise, the scope of the search is not related to the justification for its initiation, as it must be to meet the reasonableness standard of the Fourth Amendment.

■ In evaluating these searches, the court must view as a whole all factors that were considered by Lick, an experienced and prudent customs inspector. *See United States v. Mastberg*, 503 F.2d 465, 469 (9th Cir. 1974). The suspicious details observed by Lick, including Rodriguez's responses to questions, his behavior, and the items discovered in his luggage, could and did reasonably suggest the potential for narcotics smuggling.

Nor was it unreasonable to conclude from the items in the luggage that appellant might be concealing narcotics on or within his body. In view of Lick's subjective suspicion and the numerous "objective, articulable facts" suggesting that Rodriguez might be smuggling narcotics, the search to which he was subjected was within constitutional bounds of reasonableness.

Rodriguez erroneously relies on *United States v. Price*, 472 F.2d 573 (9th Cir. 1973), for the proposition that, once the pat-down search revealed nothing, the customs agents should have discontinued the personal search. *Price* dealt with a strip search, not a pat-down. A customs agent there required a woman to disrobe because she appeared nervous and had a suspicious bulge around her waist.

The court held that, once the agent discovered that the bulge was merely body fat, it was unreasonable to have continued the personal search solely because of the woman's nervousness. *Price* does not suggest, however, that once a preliminary pat-down is conducted, a search must be discontinued if nothing is discovered.

In the instant case, the effect of the pat-down was neutral. It neither added to nor allayed the agent's suspicions. *Cf. United States v. Wilmot*, 563 F.2d 1298, 1300 (9th Cir. 1977) (defendant's resistance to the pat-down added to the agent's suspicion, justifying a subsequent strip search). Because sufficient articulable facts existed before the pat-down to justify the more intrusive search, the pat-down served merely as a reasonable precautionary measure.

## II.

### NOTICE

■ Rodriguez's second contention is akin to an entrapment defense. His contention, in effect, is that the government form did not fully advise him of the consequence of failure to report accurately any

monetary instruments in excess of $5,000. The point is without merit, as the form distributed by the airline clearly warns the traveler of the penalties for false reporting.

He cites two Fifth Circuit cases, *United States v. Schnaiderman*, 568 F.2d 1208 (5th Cir. 1978), and *United States v. Granda*, 565 F.2d 922 (5th Cir. 1978), which interpret 31 U.S.C. § 1101. The instant case is distinguishable because of a critical difference in the customs form used.

In *Schnaiderman* and *Granda*, the 6059–B form asked only whether the traveler was carrying into the United States over $5,000 in currency. It did not refer to the reporting requirement or form 4790. The convictions were reversed because the government's failure to inform the defendants of the reporting requirement was fatal to its burden of proving beyond a reasonable doubt that the defendants had knowingly and willfully violated the statute.

Rodriguez argues that the additional sentence on the customs form 6059–B, "If yes, you must file a report on form 4790, as required by law," does not cure the defect adverted to in the Fifth Circuit cases because the traveler may still believe it illegal to bring in more than $5,000 and that filing the statement could be an admission of guilt.

Although there is dictum in *Granda* which arguably supports that position,[3] the holdings in *Schnaiderman* and *Granda* require only that the government make known the reporting requirement. In interpreting analogous statutes penalizing the knowing or willful failure to comply with some law, the courts have never required the government to bear the burden of proving anything more than the defendant's knowledge of the duty to disclose or to refrain from doing some act. *See, e. g., United States v. Jewell*, 532 F.2d 697, 699,

704 (9th Cir. 1976) (*en banc*); *United States v. Lizarraga-Lizarraga*, 541 F.2d 826, 828 (9th Cir. 1976); *United States v. Tolkow*, 532 F.2d 853 (2d Cir. 1976).

The modified form signed by Rodriguez satisfied the government's burden of proving notification of the reporting requirement and Rodriguez's knowing and willful violation. While good policy might indicate that the form state that the importation of more than $5,000 in monetary instruments is legal, to encourage truthful reporting, the law does not require it.

AFFIRMED.

---

**3.** In *Granda*, 565 F.2d at 926–27, the court suggested:

> It is interesting to consider how easily the government could avoid a recurrence of this problem. The simplest solution would be to add a sentence on the Customs Declaration Form to the effect that if you are carrying greater than $5,000 you are required by law to fill out certain forms. Such a sentence would place all travelers on notice. Alternatively, customs officers upon finding sums in excess of $5,000 could advise travelers such is not illegal but the law does require completion of an additional form (4790) and then provide appropriate documents. This procedure would also place the traveler on notice.