UNITED STATES of America, Plaintiff-Appellee,

v.

Roger Glen GRAYSON, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

John Scott MacGREGOR, Defendant-Appellant.

Nos. 78–2352, 78–2353.

United States Court of Appeals, Ninth Circuit.

May 22, 1979.

Rehearing Denied in No. 78–2352 June 22, 1979.

As Amended June 27, 1979.

Carl E. Stewart (argued), Newport Beach, Cal., for defendants-appellants.

Michael C. Denison, Asst. U. S. Atty. by Molly Munger, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before HUFSTEDLER and WRIGHT, Circuit Judges, and CALLISTER, District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

Grayson and MacGregor appeal their convictions for possession of cocaine with intent to distribute [21 U.S.C. § 841(a)(1)],

importation of cocaine [21 U.S.C. §§ 952(a), 960(a)(1)], and aiding and abetting [18 U.S.C. § 2]. They attack the reasonableness of the border search, the court's failure to give the "two hypotheses" jury instruction, and the sufficiency of the evidence. We affirm.

### FACTS

Appellants were arrested on March 16, 1978 at the Los Angeles International Airport for importing cocaine. They arrived on a flight from Panama and Guatemala, scheduled through to San Francisco. All passengers were required to disembark in Los Angeles to clear immigration and customs, prior to reboarding for the continuation flight.

MacGregor was the first passenger to arrive at the primary United States Customs station, where Customs Inspector Reimers was on duty. During the examination of MacGregor's luggage, Reimers observed him to be cooperative, but in a hurry. Because MacGregor appeared bulky around the midriff, gave evasive answers about having been in Colombia, and had an unusually cooperative attitude, the inspector decided to make a secondary examination.

MacGregor was taken to the inspection room, and patted down for weapons with negative results. When asked to empty his pockets, he removed everything but some papers in a shirt pocket. According to one customs inspector, when asked to remove these papers, MacGregor did so hesitantly, crumpling and throwing them on the table. He was patted down again with negative results.

MacGregor disagrees with this statement of the facts. He testified that one of the inspectors removed the papers from his breast pocket after the second patdown search, and that he neither crumpled nor threw the papers on the table.

A customs inspector read the papers to determine if they contained or related to contraband or constituted receipts for undeclared merchandise. The notes read:

* Of the District of Idaho.

I) "The other one we'll wait until after the movie, They might stop things up!!"

II) "You can't stop things up. Bull Shit!!! Bull Shit!!!!! Drops into a holding tank."

The information gleaned from MacGregor led the inspectors to believe contraband was hidden in the lavatory of the airplane. A search produced negative results. The search of appellants' seats, however, produced eight containers of cocaine.

The court denied appellants' motion to suppress. A jury trial began on May 2. Prior to closing argument, the trial court indicated its intention to strike the last sentence of the proposed burden of proof instruction. Defense counsel objected. The jury returned a guilty verdict as to each appellant on all four counts.

### DISCUSSION

*The Border Search.*

MacGregor contends that the search of his person was unreasonable. He argues that the search should have concluded after the first patdown and that the notes from his pocket should be suppressed because they are not contraband. Because the information in the notes led to the search of the plane which ultimately uncovered cocaine, he asserts the contraband should have been suppressed as "fruit of the poisonous tree." *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We disagree.

This circuit has enunciated several standards applicable to border searches, depending upon the degree of intrusiveness. *See, e. g., United States v. Palmer,* 575 F.2d 721 (9th Cir. 1978); *Henderson v. United States,* 390 F.2d 805 (9th Cir. 1967). The court in *Palmer* stated:

> for examination of vehicle[s], luggage, *contents of pockets* or purse, *no suspicion*

*at all is required*; for a strip search, "real suspicion directed specifically to that person" is required . . . But between a search of pockets and a strip search there can be a wide variety of types of intrusion, with varying degrees of intrusiveness . . . It is hardly feasible to enunciate a clear, and simple standard for each . . . .

575 F.2d at 723 (emphasis added).

▪ Although in *Palmer,* we said that no suspicion was required to examine the contents of pockets, (*see also United States v. Wilmot,* 563 F.2d 1298, 1300 (9th Cir. 1977)), in *United States v. Carter,* 563 F.2d 1360, 1361 (9th Cir. 1977), we stated that "mere suspicion" was necessary for a patdown at a border. The search that occurred here was clearly reasonable either under a "no suspicion" standard, or a "mere suspicion" standard.[1]

In evaluating the search, the court must view as a whole all factors considered by Inspector Reimers, an experienced and prudent officer. *See United States v. Rodriguez,* 592 F.2d 553 (9th Cir. 1979). The search was justified because MacGregor lied about having been in Colombia, a country known by Reimers to be a source of contraband and the origin of extensive drug smuggling activity.

Furthermore, MacGregor appeared bulky around the midriff and was in a hurry to clear Customs. These factors were sufficient to justify a suspicion that MacGregor was violating Customs laws and justified the initial patdown.

▪ Customs inspectors need not stop searching when an initial patdown reveals nothing. Here, the first patdown neither added to the agent's suspicion nor allayed it. The search had a neutral effect because he already had facts sufficient to justify inspecting MacGregor's pockets. *See Rodriguez,* 592 F.2d at 556; *Palmer,* 575 F.2d at 723.

---

1. MacGregor would characterize the removal of the notes from his pocket as a strip search, requiring "real suspicion." He relies on *United States v. Price,* 472 F.2d 573 (9th Cir. 1973) and *Henderson v. United States,* 390 F.2d 805 (9th Cir. 1967). Even if we were to accept his version of the facts, removal of items from a pocket is not a strip search and the cases cited are inapposite.

In addition, we must view the facts in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Therefore, we must assume the jury believed the inspector's testimony that MacGregor reluctantly removed the papers from his pocket and crumpled them.

These actions gave the inspector additional reason to suspect that the papers contained or related to contraband or were evidence of items not declared by MacGregor. This required that the notes be read. Any invasion was minimal and did not violate the constitutional requirement of reasonableness.

Because the notes were not the product of an illegal search, their use which led to the search of the plane and discovery of cocaine did not make the contraband fruit of the poisonous tree. The court correctly admitted the cocaine and notes into evidence.

*Sufficiency of the Evidence.*

Appellant Grayson argues that the evidence produced at trial was insufficient to support conviction. He notes that the primary evidence was circumstantial, and that, at best, he had constructive possession of the contraband found under his seat.

On appeal, not only must we construe the evidence in the light most favorable to the government, but we may not lightly set aside the conclusions of the fact finder. The test is whether the jurors could rationally conclude from the evidence that guilt was established beyond a reasonable doubt. *United States v. King,* 552 F.2d 833, 852 (9th Cir. 1976); *United States v. Nelson,* 419 F.2d 1237, 1242–44 (9th Cir. 1969).

The government had to prove that each defendant was guilty of possession of a narcotic substance with the intent to distribute in violation of 21 U.S.C. § 841(a)(1), importation in violation of 18 U.S.C. §§ 952(a), 960(a)(1), and aiding and abetting in violation of 21 U.S.C. § 2. The evidence was clearly sufficient.

Possession of a controlled substance with the intent to distribute may be constructive, as well as actual. *United States v. Amaro,* 422 F.2d 1078, 1080 (9th Cir. 1970). Constructive possession may be shown through direct or circumstantial evidence of dominion and control over the contraband. *United States v. Valentin,* 569 F.2d 1069, 1071 (9th Cir. 1978). It may be inferred where the defendant has the ability to produce the contraband, if only through an agent. *Arellanes v. United States,* 302 F.2d 603, 606 (9th Cir.), *cert. denied,* 371 U.S. 930, 83 S.Ct. 294, 9 L.Ed.2d 238 (1962). The jury may consider as evidence a less than credible explanation given by the defendant concerning his proximity to the contraband. *United States v. Valdovinos,* 558 F.2d 531, 534 (9th Cir. 1977).

Grayson and MacGregor were traveling companions in adjoining seats on an international flight. En route, MacGregor was seen making numerous trips to the restroom, which he testified were for the purpose of disposing of airsickness bags.

MacGregor contends that the notes from his pocket referred to the disposal of airsickness bags. But passengers who sat directly behind appellants observed no air sickness or carrying of bags to the restroom.

The inspectors found a plastic container with cocaine under each appellant's seat cushion. Three other containers with cocaine were found in the life vest pouches under each seat. Only appellants' seats were without life vests.

The facts were enough for the jury to conclude that the appellants possessed the cocaine and that they intended to distribute it. Eight containers weighing 751 grams, with a purity range of 82 to 91 percent, were found. Such an amount, of that degree of purity, is not normally kept for personal use. The wholesale value was $65,000 to $75,000 and the street value after cutting was $200,000 to $225,000. *See, Valdovinos,* 558 F.2d at 534–35; *Valentin,* 569 F.2d at 1071.

**1230**

Carrying cocaine on an international flight from Latin America, coupled with the above evidence, was sufficient to support the finding that appellants were guilty of importation, possession with intent to distribute, and aiding and abetting.

*The "Two Hypotheses" Jury Instruction.*

Appellants assign error to the court's refusal to complete the reasonable doubt instruction with:

> If the jury views the evidence in the case as reasonably permitting either of two conclusions—one of innocence, the other of guilt—the jury should of course adopt the conclusion of innocence.

This language is included in 1 Devitt and Blackmar, *Federal Jury Practice and Instructions,* § 11.14, pg. 310–311 (3rd Ed. 1977). The judge used the standard instruction without the quoted language.

The standard of review is whether the instruction taken as a whole was misleading or represented a statement inadequate to guide jury deliberations. *Stoker v. United States,* 587 F.2d 438, 440 (9th Cir. 1978).

The government relies correctly on *Mull v. United States,* 402 F.2d 571, 575 (9th Cir. 1968), *cert. denied,* 393 U.S. 1107, 89 S.Ct. 917, 21 L.Ed.2d 804 (1969), which held that a court's refusal to give the "two hypotheses" jury instruction is not error.[2]

The court could appropriately have given the requested instruction but its failure to do so is not error because the reasonable doubt instruction that was given described the government's obligation. *Mull,* 402 F.2d at 575; *Stoker,* 587 F.2d at 440.

AFFIRMED.

**2.** Appellants would distinguish *Mull,* arguing that the present case, unlike *Mull,* is based entirely on circumstantial evidence, therefore the deleted language was more critical. They add that the jury instruction given in *Mull* was not taken from Devitt and Blackmar, and was requested only by the defendant.

These arguments lack merit. The court in *Mull* made no mention of the source of the instruction, who requested it or the nature of the evidence. A form book is not binding authority. In *United States v. Nelson,* 419 F.2d 1237, 1241 (9th Cir. 1969), this court approved the following instruction: "the law makes no distinction between direct and circumstantial evidence but simply requires that the jury be satisfied of the defendant's guilt beyond a reasonable doubt from all the evidence in the case."