8 F.3d 31
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ivan BENITEZ; Jairo Humberto Moreno, Defendants-Appellants.
 Nos. 92-10423, 92-10369.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 11, 1993.
Decided Aug. 30, 1993.
 
 Before POOLE, BOOCHEVER and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellants Ivan Benitez and Jairo Humberto Moreno were convicted and sentenced for their involvement in a multi-million dollar cocaine importation and distribution conspiracy. The jury convicted both Benitez and Moreno of conspiracy to possess with intent to distribute and to distribute cocaine in violation of 21 U.S.C. § 846 ("Count Two"). Benitez also was convicted of possession the intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) ("Count Three"). The district court sentenced both Benitez and Moreno to 195 months imprisonment, to be followed by two consecutive 5-year periods of supervised release for Benitez and one 5-year period of supervised release for Moreno. Benitez appeals his Count Three conviction, and both Benitez and Moreno appeal their sentences. This court has jurisdiction to hear the appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We affirm.
 
 DISCUSSION
 
 3
 I. Sufficiency of the Evidence to Convict Benitez of Count Three.
 
 
 4
 Benitez argues that the district court erred by denying his motion for a judgment of acquittal pursuant to Fed.R.Crim.P. 29 because the evidence was insufficient to convict him on Count Three. In determining whether to grant a Rule 29 motion, the district court must ask "whether, viewing the evidence in the light most favorable to the Government, there was relevant evidence from which the jury could reasonably find the accused guilty beyond a reasonable doubt of each element of the crime charged." United States v. Yarbrough, 852 F.2d 1522, 1542 (9th Cir.), cert. denied, 488 U.S. 866 (1988). We apply the same test on appeal. United States v. Hazeem, 679 F.2d 770, 772 (9th Cir.), cert. denied, 459 U.S. 848 (1982).
 
 
 5
 The indictment charged that the Count Three offense occurred on or about July 13, 1991, in the District of Nevada. Because Benitez did not have actual or constructive possession of the cocaine on July 13, 1991, and was not charged with aiding and abetting the offense, the only basis for his Count Three conviction is a Pinkerton theory of coconspirator liability. In Pinkerton v. United States, 328 U.S. 640 (1946), the Supreme Court held that a defendant could be convicted for the substantive offenses of his coconspirators committed in furtherance of the conspiracy even though he did not personally participate in those offenses. To convict a defendant under the Pinkerton theory, the government must prove that "(1) the substantive offense was committed in furtherance of the conspiracy; (2) the offense fell within the scope of the unlawful project; and (3) the offense could reasonably have been foreseen as a necessary or natural consequence of the unlawful agreement." United States v. Douglass, 780 F.2d 1472, 1475-76 (9th Cir.1986).
 
 
 6
 Benitez argues that there was insufficient evidence to satisfy the first prong of the Douglass inquiry. He contends that none of the alleged conspirators can be found to have committed a substantive offense in furtherance of the conspiracy. Benitez also asserts that even had such an offense been committed, he was not party to the conspiracy at that time so that he could not have foreseen the offense as prong three requires. In denying Benitez's Rule 29 motion, the district court concluded that defendant Bevans possessed cocaine with the intent to distribute it on July 13, 1991; that the offense was committed in furtherance of the Count Two conspiracy; and that Benitez was a party to the conspiracy at that time.
 
 
 7
 1. Evidence that Bevans possessed cocaine with the intent to distribute it.
 
 
 8
 Benitez contends that Bevans did not actively participate in the cocaine transaction or personally handle the cocaine so that Bevans did not possess the drugs at the time he was arrested. "Possession of a controlled substance under section 841(a)(1) 'may be constructive, as well as actual.' " United States v. Disla, 805 F.2d 1340, 1350 (9th Cir.1986) (quoting United States v. Grayson, 597 F.2d 1225, 1229 (9th Cir.), cert. denied, 444 U.S. 873 (1979)). "[C]onstructive possession may be demonstrated by direct or circumstantial evidence that the defendant had the power to dispose of the drug...." Id. However, " ' "mere proximity to the drug, mere presence on the property where it is located, or mere association, without more, with the person who does control the drug or the property on which it is found, is insufficient to support a finding of possession." ' " Id. at 1351 (quoting Murray v. United States, 403 F.2d 694, 696 (9th Cir.1968) (quoting Arellanes v. United States, 302 F.2d 603, 606 (9th Cir.), cert. denied, 371 U.S. 930 (1962))). The government therefore must "demonstrate sufficient indicia of dominion and control to support the inference of constructive possession." Id.
 
 
 9
 Although the evidence suggests that Hynes was the primary actor at the meeting between Burton, Hynes, and Bevans on July 9, 1991, the record also supports a finding that Bevans was an active participant in the drug transaction. Bevans accompanied Hynes to the site of the transaction. While Burton showed Hynes a portion of the 165 kilograms of cocaine, Bevans backed up his truck so that the drugs could be loaded into the vehicle. Bevans took the truck's keys with him when he stepped out of the vehicle. Considering the evidence in the light most favorable to the government, Bevans had control over, and therefore constructive possession of, the cocaine at the moment he was arrested.
 
 
 10
 2. Evidence of Bevans' participation in the Count Two conspiracy.
 
 
 11
 Benitez also asserts that Bevans cannot be found to have participated in the Count Two conspiracy because he lacked knowledge of the conspiracy's objective. "Knowledge of the objective of the conspiracy is an essential element of any conspiracy conviction." United States v. Krasovich, 819 F.2d 253, 255 (9th Cir.1987).
 
 
 12
 It is argued that Bevans thought Hynes and he were meeting Burton to pick up documents, not drugs, and therefore that Bevans did not know the objective of the conspiracy to distribute cocaine. The record refutes Benitez's claim. The evidence shows that Bevans assisted in setting up the meeting with Burton to retrieve the cocaine. On July 9, 1991, Castillo informed Burton that he would be sending "Lou ... from Avi" to Reno, Nevada, to pick up 165 kilograms of cocaine. On July 12, 1991, Bevans contacted Burton using this code phrase. He told Burton "De parte de Avi" and said "it is pretty safe because it's two of us." A meeting was arranged at the Denny's Restaurant located next to the motel where Bevans and Hynes were staying. Not only did Bevans assist in arranging the meeting with Burton, he also actively participated in the transaction as noted above.
 
 
 13
 This evidence is sufficient to support a finding that Bevans knew of the conspiracy's objective to distribute cocaine. The district court therefore did not err in finding that a jury could conclude beyond a reasonable doubt that Bevans was a member of the Count Two conspiracy.
 
 
 14
 3. Evidence that Benitez was a member of the Count Two conspiracy at the time Bevans committed the possessory offense.
 
 
 15
 Whether Benitez was a member of the Count Two conspiracy when Bevans was arrested at 12:30 a.m. on July 13, 1991, is a more difficult question. Benitez argues that he did not enter the conspiracy until Rogelio paged him at 1:45 p.m. on July 13th and asked him to pick up the drugs. Thus the issue in this case is not whether Benitez was a coconspirator; the issue is when he became one.
 
 
 16
 Mere association with conspirators does not establish that a defendant is part of the conspiracy. United States v. Lopez, 625 F.2d 889, 896 (9th Cir.1980). It is clear, however, that the government proved a conspiracy existed at the time of Bevans' arrest. "Once the existence of the conspiracy is shown, evidence establishing beyond a reasonable doubt a knowing connection of the defendant with the conspiracy, even though the connection is slight, is sufficient to convict him of knowing participation in the conspiracy." United States v. Meyers, 847 F.2d 1408, 1413 (9th Cir.1988). "This rule creates a presumption that one who acts in furtherance of a conspiracy knows of the conspiracy's existence." United States v. Penagos, 823 F.2d 346, 348 n. 1 (9th Cir.1987). We therefore must determine whether the evidence is sufficient to support a finding that Benitez was connected, even slightly, with the conspiracy at the time of Bevans' arrest.
 
 
 17
 The district court found that a rational jury could conclude that Benitez was a coconspirator at the time of Bevans' arrest based on three principal points. First, on July 9, 1991, Castillo gave Hynes the paper containing the numbers and codes that government agents used to contact Rogelio, and subsequently Benitez. These numbers and codes initially connected Hynes and Bevans with Burton in Reno. After the government arrested Hynes and Bevans, Special Agent Gunn used the paper to contact Castillo's Los Angeles connection. Upon contacting "50" at the number listed on the paper, Gunn was told, presumably by Rogelio, to page his contact person, "Luis," at another number. Benitez answered Gunn's page at the given number. The district court concluded that a jury could reasonably have inferred that the immediacy with which the call to "50" revealed Benitez's number meant that Benitez and Rogelio had prepared in advance their plan to retrieve the cocaine. That inference would support the conclusion that Benitez was part of the Count Two conspiracy before Bevans' arrest.
 
 
 18
 Second, the district court noted that when Gunn and Benitez initially met, Benitez identified himself with the phrase, "Luis de parte de Rogelio." The district court considered this further evidence that Benitez was tied in closely with the conspiracy. Finally, the court emphasized that Benitez knew when he initially met with Gunn that the transaction involved 165 kilograms of cocaine, which is allegedly worth between $3,000,000 and $16,000,000.
 
 
 19
 None of this evidence directly compels a finding that Benitez was connected with the conspiracy at the time of Bevans' arrest. However, "[s]uch [a] connection to a conspiracy may be inferred from circumstantial evidence." United States v. Mares, 940 F.2d 455, 458 (9th Cir.1991). In reviewing the denial of a motion for judgment of acquittal, logical inferences are to be made in favor of the government. United States v. Johnson, 804 F.2d 1078, 1083 (9th Cir.1986) ("The government is entitled to all reasonable inferences that might be drawn from the evidence." At hand, these inferences cannot be based on mere speculation. United States v. Thomas, 453 F.2d 141, 143 (9th Cir.1971) (per curiam), cert. denied, 405 U.S. 1069 (1972).
 
 
 20
 We hold that a jury could reasonably have concluded beyond a reasonable doubt that Benitez was a member of the conspiracy at the time of Bevans' arrest. That Benitez knew the size of the cocaine shipment and that he used the code phrase for the Rogelio organization support a reasonable inference that Benitez participated in the conspiracy before 12:30 a.m. on July 13, 1991. Even more important, however, is the fact that Gunn was immediately told that Benitez would contact him when he dialed the number from the paper that Castillo had provided to Hynes. It is logical and not speculative to infer that Benitez and Rogelio had planned for the arrival of the cocaine well before Gunn contacted them. This inference is particularly reasonable considering the large size of the shipment. Accordingly, we affirm Benitez's Count Three conviction based on the Pinkerton theory of vicarious coconspirator liability.
 
 
 21
 II. Denial of Downward Adjustment for Acceptance of Responsibility.
 
 
 22
 Benitez and Moreno argue that the district court erred in denying them a two-level downward adjustment of their offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. Benitez's entrenchment in the conspiracy is further evidenced by his authority to arrange the times, places, and terms of the meetings with Gunn concerning the cocaine, and his savvy both in changing one meeting location because he was suspicious of the people hanging around and in advising Gunn not to use duct tape to wrap the boxes containing cocaine because it looked suspicious. "Whether or not a defendant has accepted responsibility for his crime is a factual determination" reviewed for clear error. United States v. Gonzalez, 897 F.2d 1018, 1019 entitled to great deference and should not be disturbed on review unless without foundation.' " Id. (quoting U.S.S.G. § 3E1.1, comment.).
 
 
 23
 The Application Notes to § 3E1.1 list various factors that are appropriate to consider in determining whether a defendant has accepted responsibility. Among them are whether the defendant truthfully admitted the conduct comprising the offense; whether the defendant voluntarily surrendered to authorities after committing the offense; whether the defendant voluntarily assisted the authorities in recovering the fruits and instrumentalities of the offense; and the timeliness of the defendant's acceptance of responsibility. U.S.S.G. § 3E1.1, comment. (n. 1). A defendant may be entitled to a reduction in his sentence for acceptance of responsibility after trial. United States v. Johnson, 956 F.2d 894, 904 (9th Cir.1992).
 
 
 24
 The district court found that Benitez had not accepted responsibility because (1) his statements to law enforcement agents failed to acknowledge his full participation in the offense; (2) he made several inaccurate statements to the agents; and (3) he deliberately took the agents on a "wild goose chase" after his arrest when they were searching for Rogelio. These are appropriate grounds for denying a reduction for acceptance of responsibility. See United States v. Hummasti, 986 F.2d 337, 339 (9th Cir.) (failure to express contrition is adequate grounds for denial of downward adjustment for acceptance of responsibility), cert. denied, 61 U.S.L.W. 3835 (1993); United States v. Restrepo, 930 F.2d 705, 710 (9th Cir.1991) ("truthfulness, completeness, and reliability" of defendant's statements to government officials can be considered in decision to deny downward adjustment for acceptance of responsibility); United States v. Corley, 909 F.2d 359, 362 (9th Cir.1990) (attempt to minimize role in offense justifies denial of downward adjustment for acceptance of responsibility). The record supports the district court's factual findings.
 
 
 25
 Regarding Moreno, the district court denied a downward adjustment for acceptance of responsibility because Moreno did not acknowledge responsibility for each essential element of the offense. Moreno submitted a handwritten statement that did not specifically indicate that he was working on behalf of the Restrepo-Aguirre organization or that he was part of any conspiracy. Moreno did, however, make the following statement in open court: "I do admit that I did have minimal participation, and I was conscious about it being drug [sic]." When the district court asked Moreno whether he wished to say anything further, Moreno responded, "That is all."
 
 
 26
 As noted above, an attempt to minimize one's role in a criminal offense justifies a denial of an adjustment for acceptance of responsibility. Moreno repeatedly told Special Agent Gunn, the parole officer, and the district court that he was working alone. The record, however, indicates that Moreno was in close touch with Castillo and Restrepo-Aguirre. In light of Moreno's repeated attempts to deny that he was part of a conspiracy, it was not clear error for the district court to have found that Moreno's open-court statement was insufficient to constitute acceptance of responsibility. Moreno did not fully and truthfully acknowledge his involvement in the conspiracy.
 
 
 27
 III. Denial of Downward Adjustment for Minimal Participation in the Offense.
 
 
 28
 The district court found that Benitez and Moreno were minor participants in the criminal offense and therefore decreased their offense levels by two. See U.S.S.G. § 3B1.2(b). Benitez and Moreno assert, however, that the district court erred by denying them a four-level downward adjustment for being minimal participants in the criminal activity pursuant to U.S.S.G. § 3B1.2(a). "Whether a defendant is a ... 'minimal' participant in the criminal activity is a factual determination subject to the clearly erroneous standard." United States v. Sanchez-Lopez, 879 F.2d 541, 557 (9th Cir.1989).
 
 
 29
 The Application Notes to § 3B1.2(a) state:
 
 
 30
 Subsection (a) applies to a defendant who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant.
 
 
 31
 It is intended that the downward adjustment for a minimal participant will be used infrequently. It would be appropriate, for example, for someone who played no other role in a very large drug smuggling operation than to offload part of a single marihuana shipment, or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs.
 
 
 32
 U.S.S.G. § 3B1.2, comment. (nn. 1 & 2).
 
 
 33
 Regarding Benitez, the district court found that (1) Benitez had knowledge of the scope and structure of the enterprise, evidenced by the fact that the paper given to Hynes by Castillo linked Gunn to Rogelio and, subsequently, to Benitez; (2) Benitez had a connection with Belize, evidenced again by the piece of paper and by Benitez's knowledge of the password, "Luis de parte de Rogelio"; and (3) Benitez was heavily involved with Rogelio, a known drug dealer, indicated by numerous emergency calls from Benitez's brother-in-law's house to Rogelio. Although it is questionable whether the record supports a finding that Benitez had a direct connection with Belize, it does support his indirect connection to the kingpins through Rogelio and his role in planning and retrieving the cocaine shipment. Given this evidence, we affirm the district court's denial of a downward adjustment for minimal participation as not clearly erroneous. The district court's finding that Benitez was a minor participant was adequate under the circumstances.
 
 
 34
 Moreno argues that he is entitled to minimal participant status because he was the only defendant acquitted on Count Three, the substantive count of possession with the intent to distribute cocaine. Benitez was convicted on Count Three, and the jury was unable to reach a decision regarding Hynes on that count. Moreno contends that this is evidence that he was the least culpable of the coconspirators and lacked understanding of the scope of the operation.
 
 
 35
 The district court disagreed, finding that (1) Hynes and Bevans appeared closer to being true mules and therefore were less culpable than Moreno; (2) Moreno had close contacts with the enterprise in Belize, indicated by his knowledge of the password given to Burton by Castillo and his participation in renegotiating the transfer of the 35 kilograms of cocaine, and therefore knew the scope of the operation; and (3) Moreno operated as a narcotics dealer, evidenced by the codes and numbers found in his possession upon his arrest. The record supports the conclusion that Moreno was much more than a drug courier. Thus, despite Moreno's acquittal on Counts One and Three, the district court's denial of the downward adjustment for minimal participation was not clearly erroneous.
 
 
 36
 IV. Denial of Downward Departure for Having Been Mere Mules in the Conspiracy.
 
 
 37
 Benitez and Moreno also argue that the district court erred by not granting them a downward departure for being mere "mules" in the conspiracy. See United States v. Valdez-Gonzalez, 957 F.2d 643, 650 (9th Cir.1992) (affirming district court's downward departure from recommended Guideline range based on fact that defendants participated in drug trade as mere "mules"). Benitez asserts that the district court did not adequately consider the issue. Moreno contends that the district court erroneously held that because he was a coconspirator, he could not be considered a "mule."
 
 
 38
 This court will not review a district court's discretionary decision not to depart downward from the Sentencing Guidelines. United States v. Sanchez, 914 F.2d 1355, 1363 (9th Cir.1990), cert. denied, 111 S.Ct. 1626 (1991). If the district court refused to exercise its discretion because it believed it had none, however, we will review the decision. United States v. Cook, 938 F.2d 149, 152 (9th Cir.1991). The initial question, therefore, is whether the district court exercised its discretion not to depart downward.
 
 
 39
 The district court thoroughly analyzed whether Benitez and Moreno were mules. Although the court considered the fact that Benitez and Moreno were convicted on the conspiracy charge as persuasive evidence that they were not mules, we see no evidence that the court felt it lacked authority to depart downward because of that fact. Accordingly, we hold that the district court exercised its discretion in refusing to depart downward and that its decision is not reviewable. For the same reason, we find unreviewable Benitez's claim that the district court erred in refusing to depart on the basis of duress and the government's participation in targeting the drug traffickers.
 
 
 40
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3