**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gerardo RODRIGUEZ–RODRIGUEZ,
Rosa Maria Rodriguez,
Defendants–Appellants.**

**Nos. 87–5189, 87–5190.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 5, 1988.

Decided Feb. 25, 1988.

Pieter D. Speyer, San Diego, Cal., for defendants-appellants.

William D. Baldwin and Roger W. Haines, Asst. U.S. Attys., San Diego, Cal., for plaintiff-appellee.

Before FERGUSON, BEEZER and LEAVY, Circuit Judges.

BEEZER, Circuit Judge:

Gerardo and Rosa Maria Rodriguez, defendants, were convicted of transporting undocumented aliens and of conspiring to transport undocumented aliens. Gerardo Rodriguez was also convicted of making false statements in a matter within the jurisdiction of the Immigration and Naturalization Service. We affirm.

## I

Two undocumented aliens traveled into the United States, crossing the United States–Mexican border. According to the aliens' testimony at trial, defendants agreed to charge $750 to drive the aliens and a child from San Ysidro to Los Angeles. At the San Clemente checkpoint inspectors asked about the citizenship of the occupants of the defendants' motor vehicle. Gerardo Rodriguez twice responded that all the occupants were U.S. citizens. After inspectors established that two of the passengers were undocumented aliens, defendants were arrested.

The grand jury indicted defendants on two counts of transporting undocumented aliens under 8 U.S.C. § 1324(a)(1)(B) and on one count of conspiring to transport undocumented aliens under 18 U.S.C. § 371 and 8 U.S.C. § 1324(a)(1)(B). In addition, the grand jury indicted Gerardo Rodriguez on one count of making false statements to a Border Patrol officer under 18 U.S.C. § 1001.

During the trial defendants moved for acquittal on grounds that the aliens were eligible for adjustment of status under the Immigration Reform and Control Act of 1986 ("the Act"). Although the aliens had not applied for adjustment of status, the government stipulated that, for purposes of this case only, the government would not contest an assumption that the aliens had been eligible for that adjustment at the time of the defendants' arrest. The trial judge denied defendants' motion to dismiss.

A jury convicted defendants on all counts.

## II

We review de novo a trial court's interpretation of a statute. *United States v.*

*Horowitz,* 756 F.2d 1400, 1403 (9th Cir.), *cert. denied,* 474 U.S. 822 (1985).

### A. 8 U.S.C. § 1324(a)(1)(B)

Pursuant to 8 U.S.C. § 1324(a)(1)(B), criminal penalties apply to any person who, knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law....

■ Defendants imply that they did not transport aliens who were in the United States in violation of law: according to defendants' brief, the aliens had been eligible for adjustment of status and so were not in the country unlawfully for purposes of 8 U.S.C. § 1324(a)(1)(B).

Section 1324(a)(1)(B) itself makes no exception for an undocumented alien who is eligible for adjustment of status. The Act's adjustment program appears at 8 U.S.C. § 1255a; nothing in the program suggests that an alien who is eligible for adjustment of status no longer "remains in the United States in violation of law." 8 U.S.C. § 1324.

Under the Act's adjustment program an alien must meet several requirements to obtain "the status ... of an alien lawfully admitted." 8 U.S.C. § 1255a(a). One requirement is that an alien "must establish that he entered the United States before January 1, 1982, and that he has resided continuously in the United States *in an unlawful status* since such date and *through the date the application is filed* under this subsection." 8 U.S.C. § 1255a(a)(2)(A) (emphasis added).

To be eligible for adjustment of status in the first place, the aliens in this case needed to reside in the United States in an unlawful status. They had not filed applications for adjustment of status. Hence the aliens remained in the United States in violation of law. By transporting the aliens in furtherance of that violation of law, defendants themselves violated 8 U.S.C. § 1324(a)(1)(B).

Case law supports this interpretation. The most analogous case is *United States v. Pereira-Pineda,* 721 F.2d 137 (5th Cir. 1983). In that case the Fifth Circuit held that the possibility that aliens might apply for asylum, allowing them to remain at liberty while their rights were determined, did not mean the aliens resided lawfully in the United States before applying for asylum. *Id.* at 139. *See also United States v. Merkt,* 764 F.2d 266 (5th Cir.1985) (per curiam). Likewise in this case the possibility that the aliens might apply for adjustment of status did not mean they remained lawfully in the United States before applying.

■ Even if mere eligibility for adjustment of status did mean the aliens remained in the United States lawfully, defendants still would have violated 8 U.S.C. § 1324(a)(1)(B) because the aliens had "entered ... the United States in violation of law." The Act states that it shall not "be construed as authorizing an alien ... to be admitted to, the United States in order to apply for adjustment of status." 8 U.S.C. § 1255a(a)(3)(C). In this case, even if the aliens had entered the country to apply for adjustment of status, they would have entered in violation of law. By transporting aliens who had entered the United States in violation of law, defendants themselves violated 8 U.S.C. § 1324(a)(1)(B).

■ Seeking to avoid this conclusion, defendants contend that the aliens' eligibility for adjustment of status nevertheless made the defendants' conduct noncriminal under 8 U.S.C. § 1324(a)(1)(B). Defendants emphasize a difference between sections 1324(a)(1)(A) and 1324(a)(1)(B). Section 1324(a)(1)(A) makes it a crime for anyone to bring an alien into the United States at undesignated areas, "regardless of any future official action which may be taken with respect to such alien." Defendants claim that because section 1324(a)(1)(B) omits this qualification, the court should infer that "future official action" with respect to an alien would make it noncriminal to have transported that alien.

Defendants do not show that Congressional intent supports their view of the omission in section 1324(a)(1)(B). Indeed, Congressional intent supports the view that defendants violated section 1324(a)(1)(B). In the Immigration Reform and Control Act of 1986, Congress amended section 1324 to close the net around alien-smugglers. *See* H.R.Rep. No. 682, 99th Cong., 2d Sess. at 66; *reprinted in* 1986 U.S. Code Cong. & Admin.News 5649, 5669–70. Congress meant to offer adjustment of status to eligible aliens, not a loophole to those who would exploit them.

Even if defendants were correct in their interpretation, defendants still would not avoid section 1324(a)(1)(B). Defendants fail to show that any official action, such as an adjustment of status, later was taken with respect to the aliens that defendants transported. Defendants point to the government's stipulation that the aliens were eligible for adjustment of status. The government's stipulation, however, was for the sake of argument in the government's prosecution of defendants. The stipulation was not an "official action" taken "with respect" to the aliens.

■ Finally, defendants suggest that the mere possibility of future official action regarding the aliens made the defendants' conduct noncriminal under 8 U.S.C. § 1324(a)(1)(B). By this logic, the statute would have no effect; anyone charged under section 1324(a)(1)(B) could claim that future official action might be taken with respect to the aliens that he had transported.

### B. 18 U.S.C. § 1001

■ Gerardo Rodriguez argues that we should reverse his conviction under 18 U.S.C. § 1001 on grounds that he did not misstate a material fact at the San Clemente checkpoint. To be material a statement need only have the propensity or capacity to influence or affect an agency's decision. *United States v. Facchini,* 832 F.2d 1159, 1162 (9th Cir.1987); *United States v. DeRosa,* 783 F.2d 1401, 1408 (9th Cir.), *cert. denied,* 477 U.S. 908, 106 S.Ct. 3282, 91 L.Ed.2d 571 (1986). The agency need not rely on the information in fact for it to be material. *United States v. Facchini,* 832 F.2d at 1162; *United States v. Vaughn,* 797 F.2d 1485, 1490 (9th Cir.1986).

The Border Patrol at the San Clemente checkpoint is charged with conducting immigration inspections to determine citizenship of those passing through. Gerardo Rodriguez's statement that all occupants of the motor vehicle were U.S. citizens obviously had the capacity to affect the Border Patrol's decision to conduct an inspection and to determine whether occupants were U.S. citizens. His misstatement was material.

### III

Defendants transported aliens who, although eligible for adjustment of status, had entered and remained in the United States in violation of law. Gerardo Rodriguez made a material misstatement to inspectors at the San Clemente checkpoint. Defendants violated 8 U.S.C. § 1324(a)(1)(B); Gerardo Rodriguez violated 18 U.S.C. § 1001 as well.

AFFIRMED.