Paul H. Duvall, King & Ballow, San Diego, Cal. for defendant-appellant.

Cynthia Lynne Millsaps, Asst. U.S. Atty., Criminal Div., San Diego, Cal., for plaintiff-appellee.

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Darren Joseph BECKER,**
**Defendant–Appellant.**

No. 87–5215.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 5, 1988.

Decided Aug. 30, 1988.

Before GOODWIN and HALL, Circuit Judges, and PANNER,* District Judge.

GOODWIN, Chief Judge:

Darren Joseph Becker appeals his conviction of one count of making a false statement to a government officer, in violation of 18 U.S.C. § 1001 (1982). He contends that his response to a question posed by a Customs port director during a prearrest, noncustodial interrogation falls within the exculpatory no exception which, in this circuit, is a defense in § 1001 prosecutions. We affirm.

On March 1, 1987, Becker, who was accompanied by codefendant Nancy Mae Hoyt, drove a 1963 Dodge station wagon to the port of entry at Tecate, California. The Tecate port director, Edwin D. Sutehall, was assisting the Customs inspector in the easternmost primary inspection booth. Sutehall motioned to Inspector Reyes Rodriguez to indicate that perhaps the vehicle should be sent for a secondary inspection.

Rodriguez asked Becker for a declaration of citizenship. Both occupants stated that

* The Honorable Owen M. Panner, Chief, United States District Judge, District of Oregon, sitting       by designation.

they were Americans. Rodriguez then asked the occupants routine questions about articles that they had acquired abroad, and asked for identification. Becker handed a driver's license to the inspector. Hoyt fumbled around in her purse. When Hoyt did not produce identification, Inspector Rodriguez directed the station wagon to the secondary inspection station, where Sutehall questioned Becker and Hoyt as to their citizenship. They replied that they were United States citizens. Sutehall asked how long they had been in Mexico and learned that they had entered Mexico at Tijuana three hours earlier that afternoon.

Sutehall then asked Becker who owned the station wagon. Becker replied that the vehicle was his. Sutehall asked Becker how long he had owned the car. Becker replied that he had owned the car for "a little while." Sutehall next asked Becker exactly how long, and Becker asked Hoyt how long. After Hoyt replied "a week," Becker told Sutehall, "a week." Sutehall asked for the registration and saw that the registration was not in Becker's name. During this interrogation, Sutehall noted that Becker was very nervous. Based on his conversation with Becker and Becker's demeanor, Sutehall concluded that the vehicle warranted closer inspection. Sutehall escorted Becker and Hoyt inside the secondary office.

Subsequently, a narcotics detector dog indicated that there were drugs in the vehicle. Rodriguez then drove the car to a secondary inspection site. At that time, Rodriguez and other inspectors jacked the vehicle up and examined the underside of the car. Rodriguez inserted a tool between the fender and the lip of the rear compartment in order to view the inside of that area. After prying a three-inch hole, he noticed packages of a substance he believed to be marijuana. Approximately 90 pounds of marijuana were discovered, concealed in the rear wells of the car. Becker was indicted for lying to the Customs inspectors in the course of the border inspection.

The evidence at trial showed that the California vehicle registration for the Dodge station wagon was in the name of Salvador Contreras. Contreras had sold the Dodge station wagon to one Condales Robles, who lived in Tijuana.

At trial, Becker testified that he was told to tell the Customs inspectors that the car belonged to him. Becker also explained that an old childhood friend had asked him to assist her by driving a car back from Mexico to the United States. He stated that he was unaware that the car contained any contraband.

Title 18 U.S.C. § 1001 (1982) provides in pertinent part that:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully ... makes any false, fictitious or fraudulent statements or representations, ... shall be fined not more than $10,000 or imprisoned not more than five years, or both.

Although Becker concedes that his statement to the border agents was false, he nonetheless contends that his statement falls within the "exculpatory no" exception to § 1001.

The government argues that a facial analysis of § 1001 precludes Becker's use of the exculpatory no doctrine as a defense. The government also argues that *United States v. Medina de Perez*, 799 F.2d 540 (9th Cir.1986), was wrongly decided and that this court should proceed en banc to overrule cases purporting to recognize the exculpatory no exception to § 1001 in this circuit. We need not reach either of these arguments to decide this case.

If we followed the government's suggestion that we adopt a literal reading of § 1001, virtually any false statement, sworn or unsworn, written or oral, would be a felony in this circuit. *United States v. Bedore*, 455 F.2d 1109, 1110 (9th Cir.1972). We held in *Bedore* that such a reading would be contrary to the legislative history of § 1001. *Id.; see also United States v. Bramblett*, 348 U.S. 503, 504–08, 75 S.Ct. 504, 505–08, 99 L.Ed. 594 (1955); *United*

*States v. Gilliland,* 312 U.S. 86, 93–95, 61 S.Ct. 518, 522–23, 85 L.Ed. 598 (1941).

In *Medina de Perez,* 799 F.2d at 544, we adopted a five-part test: (1) the false statement must be unrelated to a privilege or a claim against the government; (2) the declarant must be responding to inquiries initiated by a federal agency or department; (3) a truthful answer would involve self-incrimination; (4) the government agency's inquiries must not constitute a routine exercise of administrative, as opposed to investigative, responsibility; and (5) the false statement must not impair the basic functions entrusted by law to the agency. *See id.* at 544 & n. 5. The test is phrased in the conjunctive; therefore, the exculpatory no doctrine is inapplicable if the defendant fails to satisfy any one of the above requirements. *See United States v. Olsowy,* 836 F.2d 439, 441 (9th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1299, 99 L.Ed.2d 509 (1988); *United States v. Carrier,* 654 F.2d 559, 561 (9th Cir.1981).

■■■ Becker failed to satisfy the fourth *Medina de Perez* requirement. It is difficult to draw a sharp distinction between administrative and investigative responsibilities. *United States v. Jarvis,* 653 F.Supp. 1396, 1400–02 (S.D.Cal.1987). The term "administrative" has been used in these cases to distinguish situations in which government agents are acting as "police investigators" rather than as "administrators." In routine administrative inquiries, the exculpatory no defense cannot be properly invoked. *Medina de Perez,* 799 F.2d at 545.

In *Medina de Perez,* we determined that the investigative questioning prerequisite for invocation of the exculpatory no doctrine was met when government officers, with a suspect in custody, were acting as " 'police investigators' rather than as 'administrators.' " *Id.* at 545. Thus, the critical question for § 1001 purposes is whether Becker's interrogation can be characterized as administrative or investigative.

In *United States v. Goldfine,* 538 F.2d 815 (9th Cir.1976), Drug Enforcement Administration agents questioned a pharmacist concerning illegal drug purchases. We held there that the exculpatory no exception was inapplicable, largely because the agents were not conducting a criminal investigation at the time of interrogation, but rather were making an administrative determination concerning the declarant's qualifications relating to the "privilege" of dispensing drugs, and because the false statement was material. *Id.* at 820–21; *see also Medina de Perez,* 799 F.2d at 545. A customs interrogation for administrative purposes accords with our reasoning in *Goldfine.* The decision to search the automobile may have turned the episode into an investigation, but we need not reach that question.

The interrogation by the Customs officer clearly began as an administrative determination of Becker's status at the border pursuant to 19 U.S.C. § 1433(b) (Supp. IV 1986) (report of vehicle arrival and presentation for inspection) and 19 U.S.C. §§ 1481–1528 (1982) (ascertainment, collection, and recovery of duties). Under § 1433(b), Customs officers ask about vehicle ownership so that the "person in charge of the vehicle [shall] report the arrival; and present the vehicle, and all persons and merchandise (including baggage) on board, for inspection." *Cf. Jarvis,* 653 F.Supp. at 1401 (finding that agents acted as police investigators during an interrogation following the lodging of a criminal complaint). Becker's false statements were made in the administrative context and fail to meet the fourth *Medina de Perez* requirement. We are not here concerned with statements made after the automobile was searched and the contraband was found.

Because Becker's false statements failed to satisfy *all* of the *Medina de Perez* requirements, the charged false statement is not within the exculpatory no exception to § 1001. *See Olsowy,* 836 F.2d at 441 n. 2; *Carrier,* 654 F.2d at 561; *Jarvis,* 653 F.Supp. at 1399.

AFFIRMED.