UNITED STATES of America,
Plaintiff–Appellee,

v.

Ralph William MYERS,
Defendant–Appellant.

No. 88–5078.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 1988.

Decided June 23, 1989.

Manuel U. Araujo, O'Neill & Lysaght, Santa Monica, Cal., for defendant-appellant.

George B. Newhouse, Asst. U.S. Atty., Crim. Div., Los Angeles, Cal., for plaintiff-appellee.

Before SCHROEDER, REINHARDT and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

On August 13, 1987, appellant Ralph William Myers flew his single-engine airplane into the prohibited airspace over President Reagan's California ranch. The timing of his flight coincided with that of President Reagan and the presidential party, who were en route to the ranch under the escort of United States Marine Corps helicopters. One of the military helicopters gave chase, identified Myers' craft, and relayed the information to Federal Aviation Administration ("FAA") controllers who tracked the plane to John Wayne Airport in Orange County, California.

As the appellant neared the airport, he received a radio message from the tower directing him to telephone the FAA upon landing. Myers and his passenger immediately concocted a story about the appellant losing his contact lenses while in flight and, as a result, inadvertently flying into prohibited airspace. After landing, Myers telephoned this fabrication to the FAA, and subsequently repeated it to Secret Service agents who were conducting a separate investigation into the event. The appellant reiterated this story the following day to Secret Service agents while he was being detained by local authorities and undergoing a polygraph examination. Upon being told he had failed the examination, Myers admitted that the story was untrue and that he had lied out of fear of having his pilot's license revoked and to avoid a possible criminal prosecution.

Charges were brought and, following a bench trial on stipulated facts, the appellant was convicted on two counts of making false statements to federal agencies in violation of 18 U.S.C. § 1001. Myers argues on appeal that his convictions should be overturned on both counts because of insufficient evidence of the "materiality" of his false statements, and the applicability of the "exculpatory no" doctrine. We review de novo, *see United States v. Rodriguez–Rodriguez*, 840 F.2d 697, 699, 700 (9th Cir.1988) (materiality) and *United States v. Equihua–Juarez*, 851 F.2d 1222, 1224 (9th Cir.1988) (exculpatory no), and we affirm in part, reverse in part, and remand.

I

■ Section 1001 of Title 18, United States Code states in relevant part, that "Whoever ... knowingly and willfully falsifies, conceals or covers up ... a *material fact*, or makes any false, fictious or fraudulent statements or representations ... shall be fined not more than $10,000 or imprisoned not more than five years, or both."

(Emphasis added.) As this court has previously indicated with respect to section 1001, "[t]o be material a statement need only have the propensity or capacity to influence or affect an agency's decision. The agency need not rely on the .information in fact for it to be material." *Rodriguez–Rodriguez*, 840 F.2d at 700 (citations omitted).[1]

Because Myers' false statements to the FAA and the Secret Service were admittedly made in an effort to prevent the revocation of his pilot's license and to avoid the possibility of a criminal prosecution, the falsehoods clearly had "the propensity or capacity to influence or affect" each agency's decisions and were, therefore, "material" within the meaning and intent of 18 U.S.C. § 1001. Viewing the evidence in the light most favorable to the government, we conclude that the trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

II

■ Turning to Myers' second argument, we note that the so-called "exculpatory no" doctrine, which is a defense to a charge under section 1001, may be successfully invoked only where five conditions are met: (1) the false statement must be un-

---

**1.** The question of materiality in the context of section 1001 is separate and distinct from the "exculpatory no" doctrine, which is a defense to such a charge, and the elements thereof. *See,* e.g., *Equihua–Juarez*, 851 F.2d at 1225 n. 6 (discussing materiality and the holding of *Rodriguez–Rodriguez, supra* ).

related to a privilege or claim against the government; (2) the false statement must have been made in response to inquiries initiated by an agency of the federal government; (3) the false statement must not impair the basic functions entrusted by law to the inquiring agency; (4) the inquiries must not have been part of a regular exercise of administrative responsibility; and (5) a truthful response would have incriminated the declarant. *United States v. Becker*, 855 F.2d 644, 646 (9th Cir.1988) (citing *United States v. Medina de Perez*, 799 F.2d 540, 544 & n. 5 (9th Cir.1986)). Because the elements of this test are listed in the conjunctive, the failure to meet any one of them renders the defense unavailable to the accused. *Becker*, 855 F.2d at 646.

■ With respect to the conviction on Count I, it is clear that the "exculpatory no" defense is inapplicable to these facts. The FAA's inquiries were nothing more than a regular exercise of their administrative responsibilities to oversee, e.g., the flight of aircraft and the licensing of pilots, particularly with respect to the safety of the President of the United States. *See* 49 U.S.C.App. § 1348(c); 14 C.F.R. §§ 91.95, 91.104. Moreover, the FAA investigation could not lead to criminal penalties, but only to revocation of Myers' license. Because Myers' false statement to the FAA was made in an administrative context and not as part of the separate Secret Service criminal investigation, the "exculpatory no" doctrine is unavailable to him as a defense to the conviction on Count I. *See Becker*, 855 F.2d at 646.

■ The conviction on Count II, however, presents some problems. The appellant's false statements to the Secret Service agents were obviously both unrelated to any privilege or claim against the government and were made in response to inquiries initiated by the Secret Service. It is equally clear that those inquiries were not part of any regular administrative exercise, but were instead part of a criminal investigation. Similarly, because Myers had already lied to the FAA, a truthful response to the Secret Service agents' sub-

sequent queries would have incriminated him by making him subject to a charge under 18 U.S.C. § 1001 of having lied to a federal agency. Thus, the applicability or not of the "exculpatory no" doctrine to the conviction on Count II hinges on the third element of *Medina de Perez*, i.e., did the false statement impair the basic functions entrusted by law to the investigating agency?

This court has already held that, at least in a post-arrest investigative setting, "a competent government investigator will anticipate that the defendant will make exculpatory statements." *Medina de Perez*, 799 F.2d at 546. In other words, a good investigator will expect the accused to lie and will therefore conduct his investigation in such a way as to get at the truth without having to rely on the accused's misrepresentations. *Id.; accord, Equihua–Juarez*, 851 F.2d at 1225.

Here, Myers was detained and subjected to a search and criminal investigation by Secret Service agents. Myers had been read his *Miranda* rights and informed that he had been involved in a near-miss with the President's helicopter. It would have been apparent to any reasonable person that this was not merely a government agency's request for citizen assistance in gathering information; Myers was clearly being detained. In this situation, we are unable to find that the appellant's falsehoods impaired or otherwise perverted the Secret Service's investigative function. Accordingly, we hold that Myers satisfied all five elements of the "exculpatory no" doctrine with respect to the conviction on Count II, and that this count of the conviction cannot stand.

The judgment of the district court is AFFIRMED with respect to the conviction on Count I, REVERSED with respect to the conviction on Count II, and REMANDED for proceedings consistent herewith.