48 F.3d 1229
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Ramin BIBIAN, Defendant-Appellant.
 No. 94-50078.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 7, 1994.*
Decided Feb. 22, 1995.
 
 1
 Before: FARRIS, POOLE, and KOZINSKI Circuit Judges.
 
 
 2
 MEMORANDUM**
 
 
 3
 Bibian appeals the district court's denial of his motion for a judgement of acquittal following guilty verdicts on charges of: (1) failing to file a currency report when leaving the United States with more than $10,000 in cash; and (2) making false statements to a U.S. Customs Inspector. We have jurisdiction over Bibian's timely appeal under 28 U.S.C. Sec. 1291. We affirm.
 
 I.
 
 4
 A district court's denial of a motion for a judgment of acquittal is reviewed under the same standard as a challenge to the sufficiency of the evidence. United States v. Lessard, 17 F.3d 303, 304 (9th Cir.1994). Any factual determinations underlying the district court's decision are reviewed for clear error. Id.
 
 
 5
 When reviewing a challenge to the sufficiency of the evidence, we must determine whether, viewing "the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 II.
 
 6
 Under 31 U.S.C. Sec. 5316, anyone who "knowingly ... transports, is about to transport, or has transported" more than $10,000 into or out of the United States must file a report. 31 U.S.C. Sec. 5316(a)(1). Where currency in excess of $10,000 is to be transported out of the country, the report must be filed "at the time of departure." 31 C.F.R. Sec. 103.27(b)(1).
 
 
 7
 Courts have rejected a literal construction of the phrase "time of departure." Thus, in the context of air travel, the reporting requirement under Sec. 5316(a) may be triggered well before actual departure of a plane bound for another country. The leading Ninth Circuit case interpreting the "time of departure" requirement is U.S. v. $122,043.00 in U.S. Currency, 792 F.2d 1470, 1475-77 (9th Cir.1986). There, we held that a person had reached the "time of departure" by checking her luggage, passing through security, presenting her boarding pass, and entering the jetway. Id.; accord Mercado v. U.S. Customs Service, 873 F.2d 641, 646 (2d Cir.1989) (time of departure reached upon defendant's passing through x-ray screening device at entrance of boarding area); United States v. Ozim, 779 F.2d 1017 (4th Cir.1985) (time of departure reached where defendants had tickets, seat assignments, and boarding passes and were seated in gate area within two hours of scheduled departure); United States v. $831,160.45 United States Currency, 607 F.Supp. 1407 (N.D.Cal.1985), aff'd mem., 785 F.2d 317 (9th Cir.1986) (time of departure reached "both spatially and temporally" upon defendant passing through x-ray checkpoint).
 
 
 8
 In eschewing a narrow interpretation of "time of departure," the $122,043.00 in Currency court found persuasive the Fifth Circuit's reasoning in United States v. Rojas, 671 F.2d 159 (5th Cir.1982). Rojas had been stopped by customs officers as she began to walk down a jetway after handing her boarding pass to a gate attendant. A subsequent search of her luggage revealed $1,500,000 in U.S. currency. The Fifth Circuit reasoned:
 
 
 9
 We conclude that after the flight had been called for boarding and appellant had stepped onto the jetport preparing to board the plane, the critical "time of departure" had been reached. At this point, appellant had unequivocally manifested an intention to leave the United States, and although stepping on the jetport is not the latest temporal point which could be interpreted as the "time of departure," fixing this critical point at a later time would create a myriad of practical problems for enforcing the law and thus run counter to Congressional intent.
 
 
 10
 Rojas, 671 F.2d at 163 (quoted in $122,043.00, 792 F.2d at 1475).
 
 
 11
 Bibian argues that because he was to change planes at JFK in New York, he was merely boarding a domestic flight at LAX to which the reporting requirements under Sec. 5316(a) did not apply. We reject the argument.
 
 
 12
 The scheduled flight from LAX to New York resembled a typical domestic flight only insofar as it was between two cities within the United States. Beyond that, it was no ordinary connecting flight. As Bibian acknowledges, upon arrival at JFK, passengers from L.A. were to be segregated from other travelers at the airport. In addition, the uncontroverted testimony of Ken Ohan, an El Al supervisor, establishes that passengers arriving from L.A. on the charter flight were to be taken directly to a larger plane for the flight to Israel without any opportunity to commingle with the general public at JFK. Because the passengers were to be kept in a "secure" area, there was no need to subject them to security or customs checks at JFK. Indeed, that the flight from Los Angeles was scheduled to arrive in New York at 10:30 and the plane to Israel was to depart twenty-five minutes later at 10:55 strongly suggests that no customs searches were to take place at JFK. The gate at LAX was the last opportunity for customs inspections before Bibian would leave the United States; therefore, the Los Angeles to New York flight was the functional equivalent of an international departure for purposes of Sec. 5316(a)'s currency reporting requirement. Cf. United States v. Whiting, 781 F.2d 692, 696 (9th Cir.1986) (warrantless California search of package destined for Switzerland but requiring two domestic stops valid under extended border doctrine); United States v. Udufot, 711 F.2d 831, 839-40 (8th Cir.), cert. denied, 464 U.S. 896 (1993) (warrantless luggage search at Minneapolis airport was a valid border search notwithstanding connecting flight in New York because final destination was Nigeria); United States v. Duncan, 693 F.2d 971, 977 (9th Cir.1982) (warrantless customs search on airport boarding ramp permissible border search because the ramp was the "functional equivalent of a border") (quoting Almeida-Sanchez v. United States, 413 U.S. 266, 273 (1973)).
 
 
 13
 The only case cited by Bibian in support of his contention that he was not required to report the currency at LAX is United States v. Bareno-Burgos, 739 F.Supp. 772 (E.D.N.Y.1990). There, the district court dismissed a count of failing to report currency. Bareno-Burgos had arrived at La Guardia airport in New York for a flight to Miami. Upon arrival in Miami, Bareno-Burgos was scheduled to take a connecting flight to Colombia. A customs search at La Guardia revealed that Bareno-Burgos possessed more than $10,000 in currency. In granting Bareno-Burgos' motion to dismiss, the court concluded that, at the time of the search, he had not yet reached the "time of departure" necessary to trigger the reporting requirement under Sec. 5316(a). Instead, "considerable affirmative action" would be required upon his arrival in Miami to board the flight to Colombia. Id. at 782. "He would have to deplane in Miami, have his carry-on bags x-rayed again, go through an international security check and then proceed to yet another departure gate to await his Colombia flight." Id.
 
 
 14
 The Bareno-Burgos decision is readily distinguishable from this case. In contrast to Bareno-Burgos, little, if any, "affirmative action" by Bibian would have been required to complete his trip to Israel upon arrival at JFK. Barring an unexpected delay of many hours, Bibian would not have entered the terminal at JFK or have passed through additional security and customs checks. Instead, as discussed above, the evidence indicates that Bibian would have been immediately transferred to the waiting plane for the flight to Tel Aviv.
 
 
 15
 The district court properly rejected Bibian's argument that he could not have violated 31 U.S.C. Sec. 5316(a)(1) as a matter of law.
 
 III.
 
 16
 Bibian next contends that he lacked sufficient notice of the reporting requirement when attempting to board the flight at LAX. The record belies any such argument. The undisputed testimony of Inspector Salazar indicates that signs describing the requirement were posted at the gate entrance when Bibian entered to board the flight (SER 74). Moreover, before obtaining Bibian's verbal declaration, Inspector Salazar twice explained to him the reporting requirement. On both occasions Bibian indicated that he understood the requirement. At no time did Bibian indicate to the customs inspectors that he was under the impression that he was merely boarding a domestic flight, or that he intended to report the currency at JFK. Viewed in the light most favorable to the government, the evidence is sufficient to support a finding that Bibian had knowledge of the reporting requirement as he attempted to board the plan at LAX. United State v. Alzate-Restreppo, 890 F.2d 1061, 1064 (9th Cir.1989) (public address system announcement and posted signs sufficient evidence of defendant's knowledge of reporting requirement).
 
 IV.
 
 17
 Finally, Bibian argues that he was entitled to a currency report form upon his sister's request. As the government correctly points out, however, Ms. Bibian's request for a form came only after the customs inspectors discovered that both she and her brother were carrying more than $10,000. Upon the Bibians' false representation to Inspector Salazar that they each carried less than $10,000, the crime of failing to report currency was complete. The customs inspectors were therefore not required to furnish forms upon Ms. Bibian's belated request.
 
 
 18
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case appropriate for decision without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3